# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 14, 2005      Decided December 9, 2005

No. 04-1221

SAVE OUR SEBASTICOOK,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

AMERICAN RIVERS, ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Anthony W. Buxton* argued the cause for petitioner. With him on the briefs was *Linda S. Lockhart*.

*Lona T. Perry*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With her on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

*John L. Smeltzer* and *Anna T. Katselas*, Attorneys, U.S. Department of Justice, were on the brief for intervenor United States Department of the Interior.

*Charles Owen Verrill, Jr.*, *M. Evan Corcoran*, and *Sarah E. Tomalty* were on the brief for intervenors American Rivers, et al.

Before: GINSBURG, *Chief Judge*, and HENDERSON and RANDOLPH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: In an application to the Federal Energy Regulatory Commission, the owner and operator of a hydroelectric project sought to surrender its license and remove part of its dam on the Sebasticook River in Maine. Over the objection of nearby landowners, the Commission granted the application and denied the landowners' petition for rehearing. *FPL Energy Maine Hydro, LLC*, 106 F.E.R.C. ¶ 61,038 (*Initial Order*), *reh'g denied*, 107 F.E.R.C. ¶ 61,120 (2004) (*Rehearing Order*).

The owner of the hydroelectric project, FPL Energy Maine Hydro, LLC, determined that installation of a fish passage device, at a capital cost of $4.1 million with $130,000 in annual operating expenses, rendered the project economically infeasible. (The project's annual revenues were approximately $165,000 to $265,000.) Installation of the device – a fish lift – became a condition on FPL's license after the Commission amended the license to include the terms of a settlement agreement entered into by the project's previous owner, federal and state agencies, and conservation groups. *See Edwards Mfg. Co.*, 84 F.E.R.C. ¶ 61,227, at 62,092-93, 62,097 (1998).

Save Our Sebasticook (SOS), the landowners' association, complained that breaching the dam would drain the century-old reservoir behind it, diminishing property values and depriving SOS's members of the reservoir's recreational benefits. SOS urged the Commission to require FPL to install a less expensive

fish passage device – a "Canavac" fish pump – and to continue operating the project. There was some doubt whether the fish pump was a viable alternative. At the Commission's direction, FPL consulted with other signatories to the agreement and reported back that most of the parties, including the United States Department of the Interior, insisted on installation of the fish lift or partial removal of the dam to allow fish passage.

After further proceedings unnecessary to recount, the Commission granted FPL's surrender application pursuant to section 6 of the Federal Power Act, 16 U.S.C. § 799, which provides that licenses "may be altered or surrendered only upon mutual agreement between the licensee and the Commission." *See Initial Order*, 106 F.E.R.C. at 61,143. Among the reasons for its decision, the Commission stated that "a licensee is not compelled to continue operating a project if it wishes to surrender its license." *Id.* While the Commission had the options of conditioning surrender on "partial or total dam removal or to approve it without dam removal," *id.* at 61,143-44, it believed that partial dam removal would be in the public interest in light of the "long-standing fisheries goal in this river basin," *id.* at 61,144. In this initial order, and in its order denying SOS's rehearing petition, the Commission rejected the plea that it amend FPL's license to require installation of a fish pump, something the Commission thought it could not do unless FPL had applied for an amendment to its license, which it had not. *See id.* at 61,142-43; *Rehearing Order*, 107 F.E.R.C. at 61,404.

SOS's petition for judicial review raises four objections to the Commission's orders: (1) the Commission erred in concluding that it had no discretion to deny the surrender application or to force FPL to continue operating the project with license modifications; (2) the Commission should have evaluated its options under the "best adapted to a comprehensive

plan" standard instead of the "public interest" standard; (3) the Commission's decision misinterprets section 6 of the Federal Power Act; and (4) the Commission improperly allowed the agreement between FPL and the federal and state agencies and conservation groups to affect its judgment.

Only the fourth of these objections is properly before us. Neither SOS nor the individual landowners raised the other three in their rehearing requests. Under section 313(b) of the Federal Power Act, "[n]o objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do." 16 U.S.C. § 825*l*(b). Enforcement of this provision, which we have considered to pose a jurisdictional bar, *see, e.g.*, *City of Orrville v. FERC*, 147 F.3d 979, 990 (D.C. Cir. 1998); *Kelley ex rel. Mich. Dep't of Natural Res. v. FERC*, 96 F.3d 1482, 1487 (D.C. Cir. 1996); *Town of Norwood v. FERC*, 906 F.2d 772, 774 (D.C. Cir. 1990), enables the Commission to correct its own errors, which might obviate judicial review, or to explain why in its expert judgment the party's objection is not well taken, which facilitates judicial review. *See, e.g.*, *Granholm ex rel. Mich. Dep't of Natural Res. v. FERC*, 180 F.3d 278, 281 (D.C. Cir. 1999); *Nw. Pipeline Corp. v. FERC*, 863 F.2d 73, 77-78 (D.C. Cir. 1988). SOS asks us to construe its claims on rehearing liberally because the organization was not then represented by counsel. But even the most generous construction would not have alerted the Commission to the legal arguments SOS now raises before us. The statement in SOS's rehearing petition reminding the Commission of its "duty to consider all relevant facts" did not satisfy 16 U.S.C. § 825*l*(b). *See Entergy Servs., Inc. v. FERC*, 391 F.3d 1240, 1247 (D.C. Cir. 2004). To hold that this empty generality adequately raised SOS's legal objections would be to disregard the provision and the reasons underlying it.

Nor do we believe that SOS has presented, in the words of the statute, a "reasonable ground for [its] failure" to raise these objections on rehearing. 16 U.S.C. § 825*l*(b). This exception is reserved for an "extraordinary situation." *Wis. Power & Light Co. v. FERC*, 363 F.3d 453, 460 (D.C. Cir. 2004) (internal quotation marks omitted); *see also ASARCO, Inc.v. FERC*, 777 F.2d 764, 774 (D.C. Cir. 1985) (interpreting identical language in the Natural Gas Act). SOS reasons that it would have done no good for it to present its objections in a rehearing petition because the Commission would have rejected them. This involves the troubling proposition that the less convincing the party's objection, the more willing a court should be to excuse the party's failure to present it to the Commission. SOS's claim also proves too much. If the Commission's probable rejection of a party's argument were enough to constitute a "reasonable ground," very few arguments against the Commission's original order would need to be presented on rehearing. Yet we have held that a party must include its objection in a rehearing petition despite the fact that "the point sought to be appealed was raised, considered and rejected in the original proceeding." *ASARCO, Inc.*, 777 F.2d at 773 (explaining identical provision in the Natural Gas Act). Even if it were very likely that the Commission would deny the rehearing petition, a reviewing court would at least have the benefit of the agency's expert view of why it thought the petitioner's arguments failed.

There are two cases, both cited by SOS in its reply brief, in which we found that a party had a "reasonable ground" for disregarding the rehearing requirement. Neither is comparable to this case. In *Arkansas Power & Light Co. v. Federal Power Commission*, 517 F.2d 1223 (D.C. Cir. 1975), the agency had later acknowledged "that its action under challenge had been unlawful." *ASARCO, Inc.*, 777 F.2d at 774 (explaining *Ark. Power & Light Co.*, 517 F.2d at 1237). And in *Public Service Co. of New Mexico v. FERC*, 857 F.2d 833 (D.C. Cir. 1988), the

petitioner had twice presented its objections to and supporting arguments against a particular Commission practice, the Commission had given its reasons for rejecting those objections, and an intervening decision of this court had found the Commission's practice illegal. *Id.* at 836.

This brings us to the only objection properly before us. SOS argues, as it did in its rehearing petition, that the Commission wrongly treated the agreement between FPL and others as limiting the Commission's options in deciding whether to accept FPL's surrender of its license. But it was the nature of FPL's application that constrained the Commission's choices. *See Initial Order*, 106 F.E.R.C. at 61,143-44; *Rehearing Order*, 107 F.E.R.C. at 61,404. When a licensee applies for a surrender of its license, the Commission believes it may not compel the licensee to continue operating the project. *Initial Order*, 106 F.E.R.C. at 61,143; *Rehearing Order*, 107 F.E.R.C. at 61,404; *see Niagara Mohawk Power Corp.*, 83 F.E.R.C. ¶ 61,226, at 62,007 (1998); *see also Niagara Mohawk Power Corp. & Fourth Branch Assocs. (Mechanicville)*, 98 F.E.R.C. ¶ 61,227, at 61,903, *reh'g denied*, 100 F.E.R.C. ¶ 61,185 (2002); *Fourth Branch Assocs. (Mechanicville) v. Niagara Mohawk Power Corp.*, 89 F.E.R.C. ¶ 61,194, at 61,596 n.60 (1999). It follows from this legal principle, which SOS may not challenge, that FPL's application to surrender its license gave the Commission three choices – allow the surrender conditioned on removal of the dam in full, in part, or not at all. *Initial Order* 106 F.E.R.C. at 61,143-44; *Rehearing Order*, 107 F.E.R.C. at 61,404. It would have been a different matter if FPL had sought to amend its license. That FPL did not seek this relief because it was bound by the agreement is of no particular moment. Separate contractual arrangements often constrain parties appearing before the Commission. Nothing in the Federal Power Act, or at least nothing SOS has mentioned, empowered the Commission to consider the validity of the agreement in this

license surrender proceeding.   *See Rehearing Order*, 107 F.E.R.C. at 61,404.

Accordingly, we dismiss the petition for judicial review in part and deny it in part.

*So ordered*.